UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JORDAN O.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

21-CV-00088-LJV
DECISION & ORDER

On January 19, 2021, the plaintiff, Jordan O. ("Jordan"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2]  *Id.*  On December 13, 2021, Jordan moved for judgment on the pleadings, Docket Item 8; on May 7, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on June 20, 2022, Jordan replied, Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Jordan applied for both Children's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Children's DIB may be awarded to a claimant who is 18 years old or older and has a disability that began before the claimant reached age 22.  *See* 20 C.F.R. § 404.350(a)(5).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Jordan's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

**DISCUSSION**

I. **ALLEGATIONS**

Jordan argues that the ALJ erred in three ways. *See* Docket Item 8-1 at 11-28. First, Jordan argues that the ALJ erred in evaluating the supportability and consistency of the opinion of a treating physician, Mary Rykert-Wolf, M.D. *Id.* at 11-20. Second, Jordan argues that the ALJ failed to reconcile the RFC[4] determination with the opinion of a consultative examiner, Adam Brownfeld, Ph.D. *Id.* at 20-23. Third, Jordan argues that the ALJ "relied on his own lay interpretation of the record to craft a highly specific RFC that was not supported by substantial evidence." *Id.* at 23-28. This Court disagrees with each of those arguments and therefore affirms the Commissioner's finding of no disability.

II. **ANALYSIS**

**A. The ALJ properly considered Dr. Rykert-Wolf's Opinion.**

Jordan first argues that the ALJ inadequately considered the supportability and consistency factors when evaluating the opinion of Dr. Rykert-Wolf. *See* Docket Item 8-1 at 11-20.

For claims filed on or after March 27, 2017, such as Jordan's, the ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any

---

[4] A claimant's residual functional capacity ("RFC") "is the most [he] can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, – F. Supp. 3d –, 2022 WL 4486320, at *4 (W.D.N.Y. 2020) (internal quotation marks omitted) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  Instead, the ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive [he] finds the medical opinions in the case record." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).  The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "that tend to support or contradict" the opinion.  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The ALJ always must "explain how [he] considered the supportability and consistency factors" because they are "the most important factors," and he "may, but [is] not required to, explain how [he] considered the [remaining] factors."  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

In October 2019, Dr. Rykert-Wolf completed a treating medical source statement assessing Jordan's mental impairments.  Docket Item 6 at 442-47.  Dr. Rykert-Wolf opined that Jordan had: (1) no limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining pace; and (4) a marked limitation in adapting or managing himself.  *Id.* at 447.  Dr. Rykert-Wolf also opined that Jordan would miss

two days of work per month and be off-task 25% of the time on any given workday due to his mental impairments.  *Id.* at 445-46.

The ALJ appropriately considered the regulatory factors in finding Dr. Rykert-Wolf's opinion "unpersuasive."  As for supportability, the ALJ found Dr. Rykert-Wolf's off-task and absenteeism findings unsupported by her own treatment notes documenting "no clinical abnormalities that correspond[] with or support[] [Jordan's] subjective allegations."  Docket Item 6 at 27.  The ALJ likewise found that Dr. Rykert-Wolf's finding of a marked limitation in adaptation was unsupported by "her progress notes showing that [Jordan] was doing 'pretty well' on his medication regimen (1F/27, 30-31, 33), and her subsequent progress notes in October 2019 (8F/5), showing similar findings that [Jordan's] condition [was] stable or well[-]managed with medication (8F)."  *Id.*  The ALJ also concluded:

> Although [Dr. Rykert-Wolf] indicated that [Jordan] is precluded from performing more than 20% of an 8-hour workday while working in coordination with or proximity with others and responding appropriately to criticism from supervisors (5F/4-5), [she] indicated that [Jordan] has no more than moderate limitations in social interactions.

*Id.* at 28.[5]  As for consistency, the ALJ determined that the marked limitation in adaptation was inconsistent with "[Jordan's] wide range of independent activities of daily living and mental status examinations showing intact judgment and insight."  *Id.* at 27.

---

[5] An off-task limitation generally relates to a claimant's ability to concentrate, persist, or maintain pace.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00E(3).  But Dr. Rykert-Wolf based her off-task limitation, in part, on Jordan's difficulty in "[a]ccept[ing] instructions and respond[ing] appropriately to criticism from supervisors."  Docket Item 6 at 445.  The ALJ therefore explained why Dr. Rykert-Wolf's finding of a disabling off-task limitation was unsupported by her conclusion that Jordan was moderately limited in social interactions.

5

The ALJ thus addressed whether Dr. Rykert-Wolf's opinion was supported by her own records and consistent with the rest of the medical record. Moreover, the ALJ acknowledged other regulatory factors, including Dr. Rykert-Wolf's status as a treating physician and the fact that she had the opportunity to examine Jordan on multiple occasions. *See id.*

Jordan's insistence that the ALJ insufficiently considered the supportability and consistency of Dr. Rykert-Wolf's opinion boils down to a disagreement with how the ALJ weighed the evidence. It is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Jordan] is disabled." *Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Because the ALJ appropriately considered the regulatory factors in evaluating Dr. Rykert-Wolf's opinion, Jordan's first argument fails.

**B. The ALJ properly considered Dr. Brownfeld's opinion.**

Jordan also argues that the ALJ improperly considered the opinion of Dr. Brownfeld. Docket Item 8-1 at 20-23. Specifically, Jordan claims that the ALJ "failed to reconcile the RFC" with all of the marked limitations about which Dr. Brownfeld opined. *Id.* at 20.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean

that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Matta*, 508 F. App'x at 56. As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Dr. Brownfeld examined Jordan in September 2018. *See* Docket Item 6 at 414-17. Dr. Brownfeld opined, among other things, that Jordan had marked limitations with respect to regulating emotions, controlling behavior, maintaining well-being, and interacting adequately with supervisors, co-workers, and the public. *Id.* at 416. The ALJ found Dr. Brownfeld's opinion "persuasive to the extent it is consistent with the [RFC]." *Id.* at 28. As for the findings of marked limitations, the ALJ concluded that "[Dr. Brownfeld's] assessment of marked limitations in interacting with others due to [Jordan's] mental health symptomatology is supported by the record as a whole and [Jordan's] treatment history." *Id.*

Jordan argues that the ALJ did not assess Dr. Brownfeld's finding of a marked limitation in regulating emotions, controlling behavior, and maintaining well-being. Docket Item 8-1 at 21. But that is simply incorrect. A claimant's ability to regulate emotions, control behavior, and maintain well-being describes the claimant's ability to adapt or manage himself or herself. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00E(4). And the ALJ found at step three that Jordan had only a moderate

7

limitation in adapting and managing himself, addressing and citing Dr. Brownfeld's opinion in reaching that conclusion.  *See* Docket Item 6 at 24.

Moreover, the ALJ did not err in addressing Jordan's ability to adapt and manage himself at step three rather than when the ALJ explicitly addressed Dr. Brownfeld's opinion.  Because the ALJ addressed those factors at step three, he did not need to explain why he concluded that Jordan had only a moderate limitation, rather than a marked limitation, in regulating emotions, controlling behavior, and maintaining well-being in his evaluation of Dr. Brownfeld's opinion.  *Cf. Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 329 (S.D.N.Y. 2022) ("Moreover, while the ALJ did not separately discuss Mangual's capacity to regulate emotions, control behavior, and maintain well-being in his discussion of Dr. Schaich and Dr. Broska's opinions, the ALJ elsewhere in his decision provided reasons for his finding that Mangual was only mildly limited in this area."); *see also Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("[A]lthough we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale 'in relation to evidence in the record,' we would not remand where 'we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'" (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Jordan also argues that the ALJ's RFC finding[6] that he could perform simple to moderately complex work was incompatible with Dr. Brownfeld's assessment of a

---

[6] The ALJ found that Jordan could perform a full range of work at all exertional levels but could perform only simple to moderately complex work; could have only occasional interaction with co-workers, supervisors, and the public; and would be off-task 5% of the time.  Docket Item 6 at 24-25.

8

marked limitation. See Docket Item 8-1 at 22-23. But as just noted, the ALJ did not err in rejecting Dr. Brownfeld's finding of a marked limitation in regulating emotions, controlling behavior, and maintaining well-being. And the ALJ's agreement with Dr. Brownfeld that Jordan had a marked limitation in interacting with others did not prohibit him from performing simple to moderately complex work, especially when several tests and examiners found Jordan to have between average and superior intellectual abilities. See, e.g., Docket Item 7 at 482 (Jordan demonstrated a 118 Full-Scale Intelligence Quotient on the Weschler Adult Intelligence Scale, "which is in [the] high average range.").

Indeed, the ALJ explained exactly why he found that Jordan could "understand, remember, and carry out simple to moderately complex work," Docket Item 6 at 23, 26, noting that:

> [Jordan] was observed to be alert and oriented with no evidence of cognitive dysfunction during the period at issue. A consulting psychologist noted that [Jordan's] use of grammar, vocabulary[,] and abstraction suggested high average intellectual abilities (1F/56). Test results on the WAIS-4 showed overall intellectual abilities to be in the very superior to average range (8F/4), with a full[-]scale IQ score in the high average range (8F/15). His ability to learn and recall word lists, short stories, spatial information, and abstract visual information was noted to be in the high normal range (Exhibit 8F/13). Although he presented with anxiety symptoms that impaired his attention and concentration (Exhibit 2F/3), [Jordan] is largely capable of completing a serial 7s and 3s, follow a 3[-]step command, and recall 3 out of 3 objects immediately and after a delay (Exhibits 1F/52; 2F/4; 8F/10). Even though there is documented evidence of recurring excessive worrying, restlessness, and fatigue (2F/2), mental status exam[s] generally showed logical and goal directed thought processes, good insight and judgment, and no evidence of visual hallucinations, delusions[,] or paranoia.

*Id.* at 26-27. Based on that careful and detailed discussion of the evidence, the ALJ's finding that Jordan could perform simple to moderately complex work was supported by substantial evidence and not in conflict with Dr. Brownfeld's findings.

### C. The ALJ's 5% off-task limitation was supported by substantial evidence.

Finally, Jordan argues that the ALJ "relied on his own lay interpretation of the record to craft a highly specific RFC that was not supported by substantial evidence." Docket Item 8-1 at 23. More specifically, Jordan asserts that the ALJ's inclusion of a 5% off-task limitation was error because it was not supported by any opinions in the record. *See id.* at 26.

As noted above, an ALJ's RFC determination need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Matta*, 508 F. App'x at 56. Further, a limitation with a percentage range or other descriptor is not automatically unsupported by substantial evidence. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [the claimant's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence."). The question is whether there was evidence in the record that could support the ALJ's finding of a 5% off-task limitation. *See id.* ("For that reason, the cases cited by Johnson, wherein this Court rejected highly specific findings that were unsupported by the record, are inapt."). And there was.

First, Dr. Rykert-Wolf opined that Jordan would be off-task 25% of the time. Docket Item 6 at 445. But as the ALJ noted, that off-task limitation was tied to Jordan's difficulties in working in coordination with or proximity to others and in responding

10

appropriately to criticism from supervisors. *Id.* at 28, 444-45. The ALJ addressed Jordan's limitations in these areas by restricting him to only "occasional" interaction with co-workers, supervisors, and the public. *Id.* at 25; *see* SSR 96-9p, 1996 WL 374185, at *3 (Jul. 2, 1996) (defining "occasionally" as "occurring from very little up to one-third of the time."). In other words, that restriction addressed Dr. Rykert-Wolf's 25% off-task limitation and Jordan's marked limitation in interacting with others.

But the ALJ also needed to address Jordan's moderate limitation in maintaining concentration, persistence, and pace. Jordan testified that his ADHD "always had an impact on his ability to focus . . . [and] sort of fluctuate[d]," Docket Item 6 at 57, and Dr. Brownfeld noted that Jordan's "[a]ttention and concentration skills were impaired due to anxiety," *id.* at 415. So an off-task limitation in the RFC was an appropriate way for the ALJ to account for these findings.

As for the ALJ's decision that Jordan would be off task 5% of the time, that percentage was rooted in the remainder of Dr. Rykert-Wolf's opinion. Dr. Rykert-Wolf opined that Jordan's difficulties in (1) maintaining regular attendance and being punctual within customary, usually strict tolerances and (2) performing at a consistent pace without an unreasonable number and length of rest periods "[p]reclude[d] [Jordan's] performance for less than 10% of an 8-hour workday." *Id.* at 444. She also opined that Jordan's difficulties in (1) carrying out very short and simple instructions, (2) maintaining attention for two-hour segments, (3) sustaining an ordinary routine without special supervision, and (4) making simple, work-related decisions "[did] not preclude [Jordan's] performance of any aspect of the job." *Id.* Based on these findings, it was reasonable for the ALJ to pick a percentage between 0% and 10%—that is, 5%—when faced with

11

the task of quantifying Jordan's off-task limitation.  *See Johnson*, 669 F. App'x at 47.  So in contrast to cases where a specific limitation was based on the ALJ's own surmise or fashioned from whole cloth, *see, e.g.*, *Tara W. v. Comm'r of Soc. Sec.*, 2021 WL 4316824, at *3-4 (W.D.N.Y. Sept. 23, 2021), the 5% off-task limitation here was grounded in the record.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Jordan's motion for judgment on the pleadings, Docket Item 8, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   May 30, 2023
         Buffalo, New York


                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE